PLANT SEED COMPANY v. LUTHER HALL, *et al.*

1. CONTRACT; *Offer; Acceptance.* Where negotiations are entered into for the sale of goods, there must be an unconditional acceptance of the offer, or no contract is consummated. Thus, where negotiations were carried on by letter, and the one party residing in St. Louis wrote a letter offering $3.50 per bushel for certain goods delivered in St. Louis, and the other party, residing in Junction City, seventeen days thereafter shipped the goods to St. Louis, and at the same time wrote a letter, the first since the offer, announcing the shipment, making no acceptance of the offer, and stating that they should expect the highest market-price: *Held*, that no contract was consummated, and that the consignee was not bound to accept and pay for the goods; and further, that the court construing the letters should have so instructed the jury.

2. CONSIGNEE; *When not Liable for Goods.* Where a party to whom under such circumstances goods are consigned, refuses to receive them, and turns the bill of lading over to a responsible commission merchant in St. Louis, to dispose of as the goods of the consignors, *held*, that the consignee, acting in good faith, and with reasonable prudence, was not liable for the goods.

*Error from Davis District Court.*

THE *Plant Seed Company* brought suit against *Hall & Porter* to recover a balance of $168.51 on an account for merchandise. Defendants answered, claiming a set-off to amount of $325.73 for certain goods alleged to be sold by by them to plaintiff. Trial at the March Term 1874 of the

36—14 KAS.

district court. Verdict in favor of defendants, and against plaintiff, for $127.94, of which defendants remitted $39.40, and judgment was given for the residue, $88.54. The plaintiff appeals, and brings the case here on error.

*H. H. Snyder*, and *McClure & Humphrey*, for plaintiff.

*Charles G. Cox*, for defendants.

The opinion of the court was delivered by

BREWER, J.: The only ground of error pressed for our consideration is, that the verdict is against the evidence; and the question arises in respect to the counterclaim of defendants. Some correspondence passed between the parties in March 1873, in consequence of which defendants shipped some onion sets to plaintiff, at St. Louis. On receiving the bill of lading the plaintiff, claiming not to be in the commission business, turned it over to a commission merchant, who received the onions, and sold for much less than defendants claim they had sold them to plaintiff for. The negotiations between the parties were by letter. These letters, and the conduct of the plaintiff on receipt of the onions, constituted all the evidence of a contract. The following is the correspondence in the order in which it passed — defendants writing from Junction City, Kas., and plaintiff from St. Louis, Mo. Defendants to plaintiff.—"What will you give us for 40 barrels onion sets, *choice*, on board cars here?" Plaintiff to defendants.—"We will give you $3.50 per bu., delivered here, for choice top onion, *if they are the right kind;* would prefer to see a sample." Defendants to plaintiff.—"Our onion sets came from Indiana, and are *choice sifted* sets, no chaff or dirt, and are the best sets we ever saw. We want $3.50 per bu. here on cars. Freight will be 70c. per 100 lbs., although we may get a lower rate. Can't you stand it?" Plaintiff to defendants.—"We cannot pay more than $3.50 per bushel for onion sets delivered here, and would not care to buy at that now, as we have a large lot on hand." Defendants to plaintiff.—"We ship you to-day per M. K. & T.

road 25 bbls. onion sets. We hope they will reach you safely, and in good order. They are in good condition now. As soon as received please send us statement. We shall expect the highest market-price." Upon receipt of the onions the plaintiff disposed of them as stated above, and notified the defendants thereof, who objected to the disposition made, and claimed a sale to plaintiff. Upon this the jury found that there was a sale. Will the evidence sustain the verdict? It is clear, that up to the time of the shipment of the onions no contract had been closed between the parties. The only offer made by the plaintiff had not been accepted by the defendants. Their minds had not come to any point of agreement. The one had offered $3.50 in St. Louis. The other, not accepting that, demanded the highest market-price. Clearly then, they had not agreed. The plaintiff therefore, notwithstanding the prior negotiations with a view to purchase, was at liberty on receipt of bill of lading to withdraw its offer, decline to purchase, and refuse to receive the goods. How far did the subsequent conduct of the plaintiff render it liable as on a purchase? What a consignee, under the circumstances indicated, may do with the consignment, must be viewed in the light of the prior negotiations. It was made not to a stranger, but to one with whom the consignors had had prior dealings, and made in pursuance of negotiations, with reference to the sale of the very articles shipped. Clearly, the consignee might refuse to receive the consignment, and suffer the carrier to make such disposition as it saw fit. So doing, he would place himself under no liability to the consignor. Or, he might place the goods in some ordinary and safe place of storage, either in his own warehouse or elsewhere, and notify immediately the consignor of the place of storage, and that they were subject to his (the consignor's) order. And where the goods are of a perishable nature, and liable to total loss unless immediately cared for, the consignee may, acting in good faith, and with ordinary and reasonable prudence and care, place them as the goods of the consignor in the hands of a responsible commission merchant for immediate sale.

And in this, although the goods might not properly perhaps be classed as perishable goods, still we think the consignee, if acting in good faith, and with reasonable prudence, would not be responsible as purchaser, if it turned the bill of lading over to a responsible commission merchant. They were shipped with a view to a sale. The highest market-price was expected. The consignors knew that they had not accepted the offer of the consignee, and that no contract having been consummated, the latter was not bound to receive or pay for the goods. The consignee was but carrying out the expressed wishes of the consignors in placing the goods where they would be most likely to realize the highest market-price. So doing, and acting in good faith, it does not seem just that it should be held responsible as purchaser.

The case seems to have been tried in the district court upon the supposition that the jury might from the correspondence and the shipment infer a contract. For included in the shipment were some goods not spoken of in the prior correspondence, and though the jury found for the defendants as to these also, the district court compelled a *remittitur* of this amount as a condition of judgment. Plainly therefore, the learned court did not consider that the conduct of the plaintiff in St. Louis, by itself alone, rendered it responsible. The same thing also is evident from the instructions. But in this supposition the court erred. It was its duty to construe the writings, and it should have charged the jury that by those letters no contract was consummated between the parties. However, as no exception was taken to the instructions, any error in them was doubtless waived.

Counsel has urged and we are not insensible to the rule that forbids us to disturb the verdict of a jury, which has any testimony tending to establish all the essential facts to sustain it. But that rule is scarcely applicable. Here was a case tried upon an erroneous theory of the law. If that theory were correct, there was some testimony to sustain the verdict. But that theory being incorrect, both the district court and this court concur in holding there was no testimony to sustain

M. K. & T. Rly. Co. v. Brown.

it. The district court, acting upon this erroneous view of the law, upheld the verdict in part. This court takes the view of the testimony which the trial court took, and applying to it the law as rightfully construed finds that the entire verdict should follow the part rejected by that court. In this way justice between the parties will be more certainly reached, for upon a second trial any testimony tending to show bad faith, or want of reasonable care on the part of the consignee, can be introduced.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.